NIMA GHARAVI
4610 North Clark St. #1098
Chicago, IL 60640
+1 (773) 899-4688
dmca@midwestwrestle.com

Plaintiff, *pro se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NIMA GHARAVI,<br><br>      Plaintiff,<br><br>vs.<br><br>ANUJ KUMAR,<br><br>      Defendant | Case No.: 3:25-cv-08873-TSH<br><br>**[PROPOSED] ORDER GRANTING EX PARTE APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE, ORDER RESTRAINING TRANSFER OF ASSETS, AND ORDER PERMITTING ALTERNATIVE SERVICE**<br><br>Re: Dkt. No. 8 |

# I. INTRODUCTION

Plaintiff Nima Gharavi ("Mr. Gharavi") has moved *ex parte* for: (1) a temporary restraining order; (2) an order to show cause why a preliminary injunction should not issue; (3) an order restraining transfer of assets; and (4) an order permitting alternative service on Defendant Anuj Kumar ("Defendant"). The Court has read and considered all papers filed in support of the application, including the Declaration of Nima Gharavi and accompanying exhibits.

Because Mr. Gharavi moved *ex parte* requesting that no notice be provided to Defendant, and said request is granted herein, Defendant was not heard. For the reasons set forth below, Mr. Gharavi's motion is **GRANTED**.

# II. BACKGROUND

Mr. Gharavi creates original audiovisual content featuring wrestling matches. Gharavi Decl. ¶ 3, ECF No. 8-2. He has created six copyrighted videos at issue in this case, each containing substantial original creative content. *Id.* Each video displays a visible watermark—either "© Women.MidwestWrestle.com" or "© MidwestWrestle.com"—appearing prominently throughout every frame. *Id.* ¶ 4, Ex. 1. This watermark identifies Mr. Gharavi as the copyright owner. *Id.* On August 30, 2025, Mr. Gharavi filed copyright registration applications for all six videos with the U.S. Copyright Office. *Id.* ¶ 5.

Defendant operates two YouTube channels from India: @RockyFunTV (approximately 764,000 subscribers) and @GrapplingFightZone (approximately 6,940 subscribers). *Id.* ¶¶ 6-7. Defendant identified himself as the @RockyFunTV operator in his October 9, 2025 DMCA counter-notification. *Id.* ¶ 6, Ex. 4. Mr. Gharavi knows Defendant also operates @GrapplingFightZone because Defendant used the same email address (kpanuj34@gmail.com) to represent himself as the operator of both channels. *Id.*

Defendant systematically published 17 infringing works that reproduce Mr. Gharavi's copyrighted videos: 15 videos and one thumbnail to @RockyFunTV, and one video to @GrapplingFightZone. *Id.* ¶¶ 6-9, Ex. 1. In all instances, Defendant deliberately removed Mr. Gharavi's watermark through cropping, text overlays, and dimension reduction. *Id.* ¶ 27, Ex. 1. In three videos,

Defendant added a false "Rocky!" logo, falsely suggesting Rocky Fun TV owned the copyright. *Id.* ¶ 8, Ex. 1 at 6, 19, 24.[1] Defendant monetized these videos through YouTube's AdSense program. *Id.* ¶ 10.

Between October 3-6, 2025, Mr. Gharavi submitted 17 DMCA takedown notices to YouTube. *Id.* ¶ 11, Ex. 2. YouTube removed 16 of the videos. *Id.* Between October 5-8, 2025, Defendant sent Mr. Gharavi 19 emails from six different email addresses disputing the takedowns. *Id.* ¶¶ 12-13, Ex. 3.

On October 9, 2025, Defendant filed a formal DMCA counter-notification stating under penalty of perjury: "I swear, under penalty of perjury, that I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled." *Id.* ¶¶ 14-15, Ex. 4 at 3. This statement is demonstrably false—the video reproduces Mr. Gharavi's work with the watermark deliberately removed. *Id.* ¶ 16, Ex. 1 at 41-44. Critically, Defendant's counter-notification also stated: "I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant." *Id.* ¶ 18, Ex. 4 at 3. The counter-notification lists Defendant's address in Prayagraj, Uttar Pradesh, India. *Id.* ¶ 19, Ex. 4 at 3.

Mr. Gharavi filed this lawsuit on October 16, 2025. *Id.* ¶ 20. On October 19, 2025, he sent a comprehensive service package by email to all six email addresses Defendant had actively used. *Id.* ¶¶ 21-22, Ex. 5. None of the emails bounced or generated delivery failures. *Id.* ¶ 38. YouTube confirmed receipt of the ECF-stamped complaint and stated: "The content at issue won't be reinstated while legal action is in progress." *Id.* ¶ 23, Ex. 6.

On October 25, 2025—six days after Mr. Gharavi's service attempt—Defendant filed two additional DMCA counter-notifications. *Id.* ¶¶ 25-27, Exs. 7-8. YouTube rejected both because Defendant used email addresses that did not match the YouTube account owners. *Id.* ¶ 28, Ex. 8. This escalating pattern—filing three counter-notifications within 16 days, each containing knowingly false statements under penalty of perjury, with two filed after being notified of this lawsuit—demonstrates Defendant will not be deterred by legal action and cannot be trusted to preserve assets or cease unlawful conduct absent a court order. *Id.*

---

[1] For clarity, pincites to exhibits refer to the ECF-stamped page numbering.

### III. DISCUSSION

**A. Legal Standard**

A temporary restraining order requires the movant to demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for issuing a TRO is substantially identical to issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017).

For *ex parte* relief, Federal Rule of Civil Procedure 65(b)(1) permits temporary restraining orders when "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

**B. Likelihood of Success on the Merits**

Mr. Gharavi is highly likely to prevail on his claims under 17 U.S.C. §§ 1202(b), 1202(a), and 512(f).

**1. Removal of Copyright Management Information (17 U.S.C. § 1202(b))**

Section 1202(b) prohibits both (1) intentionally removing or altering copyright management information, and (2) distributing works knowing that copyright management information has been removed, when either act is done "knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(1), (3). "Copyright management information" includes "the name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." *Id.* § 1202(c)(3).

Courts have consistently held that visible identifying information about the copyright owner constitutes CMI. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (photographer's name in credit line); *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020) (gutter credits); *McGucken v. Chive Media Grp., LLC*, 2018 WL 3410095, at *4 (C.D. Cal. July 11, 2018) (watermark identifying author qualifies as protectable CMI).

Mr. Gharavi's watermarks unquestionably constitute copyright management information under § 1202(c). Each watermark includes the copyright symbol (©) and the owner's website name, appearing visibly throughout every frame. Gharavi Decl. ¶ 4, Ex. 1. Defendant intentionally removed the CMI from all 17 infringing works by employing multiple editing techniques—cropping, text overlays, and dimension reduction. *Id.* ¶ 27, Ex. 1. These modifications required affirmative action designed to prevent identification of Mr. Gharavi as the copyright owner, demonstrating deliberate rather than accidental removal.

Where a plaintiff provides original images bearing watermarks and screenshots of works on defendant's channels without those watermarks, and plausibly alleges defendant controlled the channels, the Court can draw a "reasonable inference" that defendant knowingly removed the CMI. *APL Microscopic, LLC v. Steenblock*, 2022 WL 4830687, at *2 (9th Cir. Oct. 3, 2022); *McGucken v. Chive Media Grp.*, 2018 WL 3410095, at *4-5. Unlike *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1064 (N.D. Cal. Oct. 25, 2022)—where passive embedding could not establish intentionality—Defendant here engaged in active removal, deliberately cropping and editing Mr. Gharavi's videos before uploading them to his channels. This affirmative action satisfies § 1202(b)(1)'s intentionality requirement.

Defendant then distributed these videos knowing the CMI had been removed and knowing the removal would "induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b)(3). By removing the watermark, Defendant concealed that the videos belonged to Mr. Gharavi and falsely implied he had the right to upload and monetize them. A defendant's awareness that distributing copyrighted material without proper attribution will conceal his own infringing conduct satisfies the DMCA's second scienter requirement. *Mango*, 970 F.3d at 172. Defendant's monetization through AdSense after removing Mr. Gharavi's watermark demonstrates his awareness that the removal would conceal his infringement and enable him to profit. Mr. Gharavi is highly likely to prevail on all 17 counts of § 1202(b) violations.

### 2. Providing False Copyright Management Information (17 U.S.C. § 1202(a))

Section 1202(a) prohibits knowingly providing false copyright management information with intent to induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(a)(1). In three videos, Defendant not only removed Mr. Gharavi's watermark but also knowingly added a false "Rocky!" logo

suggesting Rocky Fun TV owned the copyright. Gharavi Decl. ¶ 8, Ex. 1 at 6, 19, 24. By adding false attribution after removing the true copyright owner's watermark, Defendant provided false CMI knowing it would conceal his infringement and facilitate his monetization of Mr. Gharavi's works on his own channel. Courts have held that adding false attribution information after removing true CMI satisfies § 1202(a). *McGucken v. DMI Holdings*, 2019 WL 2970831, at *3 (C.D. Cal. Apr. 9, 2019). Mr. Gharavi is highly likely to prevail on these three counts of § 1202(a) violations.

### 3. DMCA Misrepresentation (17 U.S.C. § 512(f))

Section 512(f) provides that any person who knowingly materially misrepresents that "material or activity was removed or disabled by mistake or misidentification" shall be liable for damages. 17 U.S.C. § 512(f)(2). Congress imposed liability "only if the [party's] notification is a knowing misrepresentation." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016); *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004) ("A [party] cannot be liable simply because an unknowing mistake is made, even if the [party] acted unreasonably in making the mistake. Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the [party]." (citation omitted)). Moreover, a party "who pays lip service to the consideration of fair use by claiming it formed a good faith belief when there is evidence to the contrary is still subject to § 512(f) liability." *Lenz*, 815 F.3d at 1154.

Defendant's counter-notification stating under penalty of perjury that he had a "good faith belief the material was removed due to a mistake or misidentification" is objectively false and constitutes a knowing material misrepresentation. Gharavi Decl. ¶¶ 14-15, Ex. 4. The videos were not removed "due to a mistake or misidentification"—Defendant deliberately removed Mr. Gharavi's watermark before uploading the works. *Id.* ¶¶ 7, 16, 27, Ex. 1. Defendant knew the statement was false when he made it. He had received Mr. Gharavi's DMCA takedown notices explaining the videos reproduced Mr. Gharavi's works. *Id.* ¶ 11, Ex. 2. Most tellingly, he had to affirmatively remove Mr. Gharavi's watermark through deliberate cropping, overlays, or reformatting—acts demonstrating actual knowledge that the content belonged to someone else. *Id.* ¶ 16, Ex. 1 at 41-44. This is the paradigmatic case of a knowing misrepresentation under *Rossi*—not an unknowing mistake, but deliberate falsity with actual knowledge.

In *Viral DRM LLC v. YouTube Uploaders Listed on Schedule A*, this district found plaintiffs established "a strong probability of proving at trial" that foreign YouTube uploaders "submitted false 'put-back' or counternotices in violation of 17 U.S.C. § 512(f)" when they "responded to DMCA takedown notices with false and misleading counternotices in which they falsely and in bad faith claimed to have the rights to display [plaintiff's] videos on YouTube." 2023 WL 5601146, at *2 (N.D. Cal. Aug. 29, 2023). Here, Defendant similarly filed a counter-notification containing knowingly false statements. His subsequent filing of two additional counter-notifications on October 25, 2025—six days after being notified of this lawsuit—demonstrates a deliberate pattern of perjured statements. Gharavi Decl. ¶¶ 25-28, Exs. 7-8. Mr. Gharavi is highly likely to prevail on his § 512(f) claim.

### C. Irreparable Harm

Mr. Gharavi faces two distinct forms of immediate and irreparable harm: (1) loss of the ability to collect on any judgment due to likely asset dissipation to a non-reciprocal jurisdiction; and (2) irreparable procedural harm from Defendant's abuse of the DMCA counter-notification system.

### 1. Asset Dissipation to Non-Reciprocal Jurisdiction

Most critically, Mr. Gharavi will lose the ability to collect on any judgment to the extent AdSense funds are dissipated. Defendant is located in India (*id.* ¶ 34, Ex. 4), and these AdSense funds represent the only practical means of recovering any damages. *Id.* ¶ 29. The United States has no bilateral treaty with India for enforcement of civil judgments. *Id.* ¶ 33. Even if Mr. Gharavi obtains a substantial judgment, it will be worthless once these funds are disbursed to Defendant's accounts in India.

The AdSense funds—currently held by Google LLC in California—represent the only U.S.-based assets traceable to this case. *Id.* ¶ 29. According to Google's publicly available AdSense payment policy, disbursements are processed monthly between the 21st and 26th of each month, provided the account balance exceeds the payment threshold and no payment holds exist. *Id.* ¶ 31, Ex. 10. Once Google transfers the funds to Defendant's accounts in India during a scheduled payment window, those funds will be practically irretrievable. *Id.* ¶¶ 32-33. Given Defendant's 764,000-subscriber channel, the account balance is highly likely to exceed the payment threshold. *Id.* ¶ 10. Google's recurring monthly disbursement window runs through November 26, 2025, with subsequent windows recurring monthly

thereafter, making each passing payment window an opportunity for additional funds to dissipate irretrievably beyond the Court's reach.

In *Viral DRM*, this district confronted a substantially similar situation and granted an *ex parte* TRO with asset restraint where foreign YouTube uploaders monetized pirated videos and filed false DMCA counter-notifications. The defendants resided "outside the United States in countries with weak legal regimes and copyright protections where pursuing defendants for recovery of plaintiff's damages will be impossible." 2023 WL 5601146, at *2. The Court found that absent an immediate asset restraint, "defendants can and, based upon plaintiff's counsel's past experience, will significantly alter the status quo before the Court can determine the parties' respective rights." *Id.*

The risk of dissipation here is not speculative—it is demonstrated by Defendant's pattern of conduct: (1) removing copyright management information from 16 videos and one thumbnail, (2) adding false CMI to three videos, (3) filing a counter-notification with knowingly false statements under penalty of perjury, and (4) filing two more false counter-notifications after being notified of this lawsuit. Gharavi Decl. ¶¶ 6-9, 14, 25, Exs. 4, 7. This pattern establishes both motive and demonstrated willingness to take affirmative steps to conceal wrongdoing. Each monthly disbursement that occurs without an asset restraint allows additional funds to transfer irretrievably.

Courts recognize that risk of asset dissipation and inability to collect against foreign defendants justifies preliminary injunctive relief. *Viral DRM*, 2023 WL 5601146, at *3-4; *Cisco Systems, Inc. v. Shenzhen Usource Tech. Co.*, 2020 WL 4196273, at *9-10 (N.D. Cal. July 20, 2020). Ongoing infringement also causes immediate and irreparable harm to Mr. Gharavi's goodwill and control over his works—harms that cannot be adequately remedied by monetary damages alone. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865-66 (9th Cir. 2017).

**2. Procedural Harm from DMCA Abuse**

Independently, Mr. Gharavi suffers irreparable procedural harm from Defendant's abuse of the DMCA counter-notification system, which threatens forced restoration of infringing content. Defendant has filed three counter-notifications in 16 days—October 9, October 25 (twice)—each necessarily containing the same false statement under penalty of perjury: that the videos were removed by "mistake or misidentification." Gharavi Decl. ¶¶ 14-15, 25-26, Exs. 4, 7. Most critically, Defendant filed the latter

two counter-notifications after being notified of this lawsuit on October 19. *Id.* ¶¶ 21, 25. This demonstrates deliberate abuse of the DMCA process even in the face of pending federal litigation.

Each false counter-notification forces Mr. Gharavi into an untenable choice: either (1) file a new lawsuit within 10-14 business days to prevent YouTube from restoring the infringing content, or (2) allow the content to be restored. 17 U.S.C. § 512(g)(2)(C). This creates a cycle of repeated litigation that is itself irreparable harm. Although YouTube has temporarily paused restoration and rejected the two October 25 counter-notifications, Defendant's filing demonstrates he will continue this abusive pattern absent court intervention. Gharavi Decl. ¶¶ 23, 28, Exs. 6, 8.

Should YouTube restore infringing content, all attribution and creative control harms recur. Viewers cannot identify Mr. Gharavi as creator of works displayed to 770,000+ subscribers. Loss of goodwill and control over one's works cannot be remedied by monetary damages. *Disney*, 869 F.3d at 865-66; *Cisco*, 2020 WL 4196273, at *7. Money damages cannot remedy this ongoing procedural burden or deter Defendant from continuing to abuse the DMCA process. Only injunctive relief can prevent ongoing abuse of the DMCA's counter-notification process and protect Mr. Gharavi's ability to enforce his copyright through statutory mechanisms Congress provided.

**D. Balance of Equities**

The balance of equities tips decidedly in Mr. Gharavi's favor. Because Defendant's business model depends on systematic copyright infringement, he will suffer no legitimate hardship if enjoined from continuing unlawful conduct. The temporary restraining order would simply require Defendant to: (1) cease filing false DMCA counter-notifications, (2) stop removing copyright management information, (3) stop providing false copyright management information, and (4) refrain from withdrawing AdSense funds earned through infringement. None of these restrictions imposes any hardship on lawful activity.

"[T]he only hardship [Defendant] will suffer as a result of an injunction is court-ordered compliance with the copyright laws." *Adobe Sys., Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996). Moreover, "a company cannot build a business on infringements and then argue that enforcing the law will cripple that business." *C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007).

By contrast, without relief Mr. Gharavi will lose: (1) the ability to collect damages, (2) control over his creative works, (3) attribution for his content, and (4) any remedy for Defendant's systematic violations. The balance of hardships tips decidedly in Mr. Gharavi's favor.

### E. Public Interest

The public has a strong interest in enforcing copyright laws and deterring violations of the DMCA's copyright management information provisions. Congress enacted § 1202 specifically to protect copyright management information, recognizing that "Copyright Management Information (CMI) is an important element in establishing an efficient Internet marketplace in copyrighted works free from governmental regulation." S. Rep. No. 105-190, at 16 (1998). "Such information will assist in tracking and monitoring uses of copyrighted works, as well as licensing of rights and indicating attribution, creation and ownership." *Id.*

Allowing infringers to systematically remove copyright management information, file false DMCA counter-notifications, and then dissipate proceeds of unlawful conduct would undermine the DMCA's protective framework, encourage foreign-based infringers to exploit U.S. copyright owners, and reward perjury. Conversely, granting the temporary restraining order upholds the integrity of the copyright management information system, ensures meaningful enforcement against foreign defendants, deters future infringement, and protects individual creators.

As the Ninth Circuit recognized, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" content. *Disney*, 869 F.3d at 867. The public interest strongly favors the TRO.

### F. Ex Parte Relief Justification

*Ex parte* relief is necessary because the asset restraint must be in place before Google's monthly disbursement windows, which occur between the 21st and 26th of each month, with the present window running through November 26, 2025, and subsequent windows recurring monthly thereafter. Gharavi Decl. ¶¶ 31, 35. Each monthly disbursement that occurs before the asset restraint takes effect will permanently transfer additional funds beyond the Court's reach. *Id.* ¶¶ 33-34, 46.

While Google provides account holders the ability to voluntarily place payment holds or increase payment thresholds to defer disbursements, such measures require the account holder's voluntary

cooperation. *Id.* ¶¶ 32, 46. Defendant has demonstrated he will not provide such cooperation. After Mr. Gharavi sent him the lawsuit documents on October 19, 2025, Defendant responded by filing two additional false DMCA counter-notifications on October 25, 2025—each containing knowingly false statements under penalty of perjury. *Id.* ¶¶ 21, 25-28, Exs. 5, 7-8. A defendant who commits perjury after being notified of a lawsuit cannot be trusted to voluntarily preserve contested assets. A court order restraining the account is therefore necessary to prevent disbursements during Google's monthly payment windows.

Defendant's pattern of escalating misconduct establishes that he should not be entrusted to voluntarily preserve assets pending a hearing. He filed three counter-notifications—October 9, October 25 (twice)—each necessarily stating under oath that he had a "good faith belief the material was removed due to a mistake or misidentification." *Id.* ¶¶ 14-15, 25-26, Exs. 4, 7. The side-by-side comparisons establish this sworn statement is objectively false. *Id.* ¶¶ 6-9, 16, Ex. 1. Rather than ceasing the challenged conduct after being notified of the lawsuit, Defendant escalated it by filing two more perjurious counter-notifications. *Id.* ¶¶ 21, 25-27, Exs. 5, 7. YouTube rejected both because Defendant used email addresses that did not match the channel owners, demonstrating his pattern of providing false information. *Id.* ¶ 28, Ex. 8.

Advance notice would delay relief, allowing one or more monthly disbursements to occur before the Court can act. With the present disbursement window running through November 26, 2025, and subsequent windows recurring monthly thereafter, the recurring monthly nature of these disbursements, combined with Defendant's demonstrated unwillingness to cooperate, makes immediate *ex parte* relief essential. These circumstances parallel those in *Viral DRM*, where this district granted an *ex parte* TRO against foreign defendants who monetized infringing YouTube content and filed false counter-notifications. 2023 WL 5601146, at *1-3. Therefore, *ex parte* relief is necessary and appropriate.

**G. Alternative Service by Email**

**1. Legal Authority**

Federal Rule of Civil Procedure 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). This provision grants district courts broad discretion to authorize alternative means of service. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d

1007, 1014 (9th Cir. 2002). Any method of service must satisfy due process by being "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1016.

### 2. Not Prohibited by International Agreement

India is a signatory to the Hague Convention but has objected to Article 10, which addresses service through "postal channels." That objection does not prohibit email service. As the Supreme Court confirmed in *Water Splash, Inc. v. Menon*, 581 U.S. 271, 137 S. Ct. 1504, 1513 (2017), service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law.

District courts in this Circuit have consistently held that a country's objection to Article 10 does not prohibit service by email under Rule 4(f)(3). *Microsoft Corp. v. Goldah.com Network Tech. Co.*, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017) ("China's objection to Article 10 does not prohibit . . . email service"); *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (allowing email service on defendants located in countries that objected to service via postal channels); *Facebook, Inc. v. Banana Ads*, LLC, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (collecting cases holding that the Hague Service Convention does not expressly prohibit email service).

"Where a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail." *Media Trademark & Licensing Ltd. v. COINGEEKLTD.COM*, 2021 WL 2895289, at *4 (D. Ariz. July 9, 2021). Multiple courts have authorized email service on defendants in India under Rule 4(f)(3). *Zoho Corp. v. Target Integration, Inc.*, 2023 WL 2837676, at *3-5 (N.D. Cal. Apr. 7, 2023); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 2011 WL 2607158, at *11-14 (N.D. Cal. July 1, 2011).

In *Zoho*, this district held that "although India is a signatory to the Hague Convention, India has 'formally objected to service under Article 10, and does not permit service via postal channels.'" 2023 WL 2837676, at *3. Nonetheless, the Court found that "numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies," and authorized service by email. *Id.* at *5. Similarly, in *Richmond Technologies*, this district authorized alternative service where the

plaintiff faced delay and potential irreparable harm, noting that service through India's Central Authority would take "between six and eight months." 2011 WL 2607158, at *11.

### 3. Reasonably Calculated to Provide Notice

Email service satisfies due process because it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Rio Props.*, 284 F.3d at 1016. In Rio Properties, the Ninth Circuit approved email service where the defendant had "embraced the modern e-business model and profited immensely from it." *Id.* at 1017-18.

The circumstances here are compelling. Defendant has actively used six email addresses for all communications related to this dispute. Between October 5-8, 2025, Defendant sent Mr. Gharavi 19 emails from these six addresses disputing the DMCA takedowns. Gharavi Decl. ¶¶ 12-13, Ex. 3. Significantly, Defendant used the same email address (kpanuj34@gmail.com) to represent himself as the operator of both YouTube channels. *Id.* ¶ 6. Defendant provided one of these addresses (kumaranuj85141@gmail.com) in his DMCA counter-notification as his official contact information. *Id.* ¶ 36, Ex. 4. On October 25, 2025—six days after Mr. Gharavi sent the lawsuit documents to all six addresses—Defendant filed two additional counter-notifications, demonstrating his ongoing engagement. *Id.* ¶¶ 25, 36, Ex. 7.

Mr. Gharavi has already made two documented service attempts via these email addresses—on October 19 and October 26, 2025—sending complete service packages including summons, complaint, and waiver forms. *Id.* ¶ 38, Exs. 5, 9. Neither email bounced or generated delivery failures, confirming all six addresses remain active. *Id.* Moreover, Defendant expressly consented in his counter-notification to "accept service of process from the claimant" in this judicial district. *Id.* ¶ 37, Ex. 4.

Traditional Hague Convention service would take six to eight months and defeat the purpose of this litigation. During this delay, Defendant could dissipate the AdSense funds—the only U.S.-based recoverable assets. *Id.* ¶ 29. Google's recurring monthly disbursement window runs through November 26, 2025, with subsequent windows recurring monthly thereafter. *Id.* ¶¶ 31, 35. Courts have authorized alternative service under less compelling circumstances. See *Richmond Techs.*, 2011 WL 2607158, at *11-14; *Zoho*, 2023 WL 2837676, at *3-5; *Invisible Narratives v. Next Level Apps Tech., FZCO*, 2025 WL 551866, at *4-5 (N.D. Cal. Feb. 19, 2025).

Email service to Defendant's six active email addresses is reasonably calculated to apprise him of this action and comports fully with due process.

## IV. ORDER

### A. Temporary Restraining Order

Based on the foregoing, it is hereby **ORDERED** that Defendant Anuj Kumar, his agents, officers, directors, employees, confederates, attorneys, and all persons in active concert or participation with Defendant having notice of this Order are hereby restrained and enjoined, until further Order of the Court, from:

1. Directly or indirectly submitting additional DMCA counter-notifications to YouTube or any other service provider claiming that Mr. Gharavi's DMCA takedown notices are based on mistake or misidentification, or taking any other action to cause the restoration of videos that have been removed pursuant to Mr. Gharavi's DMCA takedown notices;

2. Removing, altering, or falsifying copyright management information, including Mr. Gharavi's watermarks (which appear as either "© Women.MidwestWrestle.com" or "© MidwestWrestle.com" depending on the video), from any of Mr. Gharavi's copyrighted works, in violation of 17 U.S.C. § 1202(b);

3. Providing or distributing false copyright management information, including adding the "Rocky!" logo or any other false attribution to any videos containing Mr. Gharavi's copyrighted works, in violation of 17 U.S.C. § 1202(a);

4. Monetizing, or causing to be monetized, any of Mr. Gharavi's copyrighted works on YouTube or any other platform;

5. Transferring ownership or control of the YouTube channels @RockyFunTV or @GrapplingFightZone during the pendency of this action, or until further order of the Court;

6. Uploading, copying, displaying, distributing, or creating derivative works of Mr. Gharavi's copyrighted works on any platform; and

7. Withdrawing, transferring, or dissipating any funds in Defendant's Google AdSense account(s) associated with the YouTube channels @RockyFunTV and @GrapplingFightZone during the pendency of this action, or until further order of the Court.

[PROPOSED] ORDER GRANTING APP. FOR TRO, OSC FOR PI, ASSET RESTRAINT AND ALT. SERVICE
CASE NO.: 3:25-cv-08873-TSH

It is further **ORDERED** that Defendant shall preserve copies of all computer files relating to the YouTube channels @RockyFunTV and @GrapplingFightZone, and shall take all steps necessary to retrieve computer files relating to these channels that may have been deleted before the entry of this Order.

**B. Order Restraining Transfer of Assets**

It is further **ORDERED** that by no later than three (3) business days after receipt of this Order, Google LLC shall, without advance notice to Defendant prior to compliance herewith, secure the AdSense account(s) associated with the following YouTube channels:

- @RockyFunTV
- @GrapplingFightZone

Google LLC shall thereby prevent the disbursement, transfer, or withdrawal of any funds currently in or subsequently deposited to those AdSense accounts, pending further order of the Court.

Google LLC shall, upon securing the accounts as required herein, promptly notify Mr. Gharavi by responding to the email address used to serve this Order upon google-legal-support@google.com.

To aid in effectuating service and preserving assets, Google LLC shall provide the following information only to the extent it is in Google's possession or control and is directly related to the YouTube channels @RockyFunTV and @GrapplingFightZone:

1. Names and physical mailing addresses;
2. Email addresses;
3. Telephone numbers;
4. One year of IP address login history for the YouTube channels @RockyFunTV and @GrapplingFightZone, and for any Google accounts and AdSense accounts associated with those YouTube channels;
5. Google AdSense ID(s) linked to the YouTube monetization of the channels @RockyFunTV and @GrapplingFightZone;
6. All YouTube channels that are or have been linked to the same AdSense account(s) associated with @RockyFunTV and @GrapplingFightZone;

7. The SubscriberInfo.html files for the YouTube channels @RockyFunTV and @GrapplingFightZone and for any other YouTube channels identified in response to item 6 above, and the GoogleUser.SubscriberInfo.html files for the Google Accounts linked to those YouTube channels;

8. Any Multi-Channel Network (MCN) affiliation information for the channels @RockyFunTV and @GrapplingFightZone, including the name of the MCN, date of integration, and contact details;

9. Account transaction details, payment history, and an accounting of all funds held in or disbursed from any AdSense accounts associated with the YouTube channels @RockyFunTV and @GrapplingFightZone; and

10. Any other account verification documents, payment method information, or tax identification information associated with the accounts identified above.

No funds restrained by this Order shall be transferred or surrendered by Google LLC without the express authorization of the Court.

No Defendant whose funds are restrained by this Order may transfer said funds in possession of Google LLC without the express authorization of the Court.

Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

**C. Bond**

The Court finds that there is no realistic likelihood of harm to Defendant from enjoining conduct that violates federal copyright law and temporarily preserving funds obtained through that unlawful conduct. Accordingly, pursuant to Federal Rule of Civil Procedure 65(c), the Court **WAIVES** any bond requirement.

In the alternative, should the Court determine that security is appropriate, Plaintiff shall post a bond in the amount of $_____.

**D. Order Permitting Alternative Service**

The Court finds that Defendant Anuj Kumar is a resident of India who expressly consented to service of process in his DMCA counter-notification filed with YouTube on October 9, 2025. Defendant stated: "I consent to the jurisdiction of the Federal District Court for the district in which my address is

located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant."

The Court further finds that Defendant has actively used six email addresses for all communications related to this dispute, including sending 19 dispute emails between October 5-8, 2025, providing one of these addresses in his counter-notification, and filing two additional counter-notifications on October 25, 2025. This demonstrates that Defendant actively monitors these email addresses and uses them for matters related to the YouTube channels at issue in this case.

The Court finds that service by email to these six addresses is reasonably calculated, under all the circumstances, to apprise Defendant of the pendency of this action and afford him an opportunity to present his objections. *Rio Props.*, 284 F.3d at 1016.

It is hereby **ORDERED** that Mr. Gharavi may serve the summons, complaint, and all papers in this action upon Defendant Anuj Kumar by email to the following six email addresses that Defendant has actively used in connection with this dispute:

1. ap4619323@gmail.com

2. kumaranuj85141@gmail.com

3. apanuj664@gmail.com

4. anujmotivationalstory@gmail.com

5. rockycartoontv@gmail.com

6. kpanuj34@gmail.com

Mr. Gharavi shall serve Defendant by _____, 2025, and file proof of service by _____, 2025.

**E. Order to Show Cause and Preliminary Injunction Hearing**

Defendant is hereby **ORDERED TO SHOW CAUSE**, in writing and on or before _____, 2025, why a preliminary injunction should not issue with the same terms as this temporary restraining order.

A hearing on Mr. Gharavi's motion for a preliminary injunction is set for _____, 2025, at 10:00 a.m. by remote video appearance.

Any opposition to Mr. Gharavi's motion for preliminary injunction must be filed and served on Mr. Gharavi by _____, 2025.

Mr. Gharavi shall file any reply memorandum on or before _____, 2025.

Defendant's failure to appear at the hearing on the preliminary injunction or to respond to this Order by the opposition deadline may result in the issuance of a preliminary injunction.

**F. Duration and Service**

This Temporary Restraining Order shall remain in effect until the date for the hearing on the motion for preliminary injunction set forth above, or until such further dates as set by the Court or stipulated by the parties, but in no event longer than the time permitted by Federal Rule of Civil Procedure 65(b)(2).

Mr. Gharavi shall serve copies of this Order on Google LLC by email to google-legal-support@google.com within one (1) business day of entry of this Order, and shall serve Defendant by email as authorized in Section D above.

Mr. Gharavi shall file proof of service on Defendant and Google LLC within one (1) business day of service.

**G. Notice to Google LLC**

Google LLC is hereby notified that compliance with this Order does not constitute a waiver of any rights or defenses Google may have, and Google may petition the Court for modification of this Order if compliance would impose undue burden or if Google believes modification is otherwise appropriate.

**IT IS SO ORDERED.**

Dated: _____, 2025

_____
Thomas S. Hixson
United States Magistrate Judge