UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIMA GHARAVI,<br><br>    Plaintiff,<br><br>v.<br><br>ANUJ KUMAR,<br><br>    Defendant. | Case No. 25-cv-08873-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 8 |

Pending before the Court is pro se Plaintiff Nima Gharavi's motion for a temporary restraining order ("TRO"). *See* Dkt. No. 8-1 ("Mot."). The Court **GRANTS IN PART** and **DENIES IN PART** the request.

## I. BACKGROUND

On October 16, 2025, Plaintiff filed a complaint alleging that Defendant Anuj Kumar, an individual residing in India, copied and manipulated several of Plaintiff's YouTube videos to remove copyright management information ("CMI") and distributed them as if they were his own. *See* Dkt. No. 1 ("Compl.") ¶¶ 12, 17, 20. Plaintiff filed applications with the United States Copyright Office on August 30, 2025, to register his videos as copyrighted works, and the registrations remain pending. *Id.* ¶ 15.

After discovering Defendant's distribution of Plaintiff's videos, Plaintiff submitted 17 DMCA takedown notices to YouTube, identifying Defendant's infringing videos and requesting their removal. Dkt. No. 8-2 ("Gharavi Decl.") ¶ 11, Ex. 2. YouTube acknowledged receipt of 16 DMCA takedown notices and temporarily removed those 16 videos. *Id.* YouTube declined the 17th request, explaining, "We've reviewed this matter and found that the copyrighted work you

identified doesn't seem to appear in the video(s) listed below." *Id.*, Ex. 2 at 86.[1] In response to Plaintiff's DMCA takedown requests, Defendant sent Plaintiff emails from six different email accounts disputing the takedowns. Dkt. No. 8-1 at 9. He also filed a formal DMCA counter-notification with YouTube regarding one of the removed videos, stating that he believed "[t]he material was removed due to a mistake or misidentification of the material to be removed or disabled." Gharavi Decl. ¶ 15, Ex. 4 at 3.

Plaintiff's complaint seeks a declaratory judgment that Defendant's conduct does not constitute fair use, and he brings claims under the Digital Millenium Copyright Act ("DMCA"), including misrepresentation in violation of 17 U.S.C. § 512(f) and removal of and false copyright management information in violation 17 U.S.C. §§ 1202(a)–(b). *Id.* ¶¶ 62–108. On November 22, 2025, Plaintiff moved *ex parte* for a TRO, seeking to enjoin Defendant from the following:

- "Directly or indirectly submitting additional DMCA counter-notifications to YouTube or any other service provider" claiming that Defendant's takedown notices are based on "mistake or misidentification," "or taking any other action to cause restoration of videos that have been removed pursuant to" Plaintiff's DMCA takedown notices;
- "Removing, altering, or falsifying" CMI from any of Plaintiff's videos;
- "Providing or distributing false" CMI "or any other false attribution" to any of Plaintiff's videos;
- "Monetizing or causing to be monetized" Plaintiff's videos on YouTube or any other platform;
- "Transferring ownership or control" of Defendant's YouTube channels while this action is pending;
- "Uploading, copying, displaying, distributing, or creating derivative works" of Plaintiff's videos on any platform; and
- "Withdrawing, transferring, or dissipating any funds in Defendant's Google

---

[1] Unless otherwise noted, all page numbers herein refer to the ECF headers at the top of the page.

2

AdSense account(s)" associated with Defendant's YouTube channels while this lawsuit is pending.

Dkt. No. 8-13 at 14–15.  Plaintiff also requests that the Court require Defendant to "preserve copies of all computer files" relating to his YouTube channels, and to "take all steps necessary to retrieve" any files related to those files that may have been deleted before the Court's ruling on the TRO.  *Id.* at 14.  Finally, Plaintiff's requested relief would also impose certain obligations on Google, which owns YouTube.  Specifically, Plaintiff would have the Court order Google to impose an asset freeze on Defendant's Google AdSense account(s) associated with any of his purported YouTube channels.  *Id.* at 15.  He also seeks a TRO requiring Google to provide identifying information about Defendant, purportedly to assist him in serving Defendant.  *Id.* at 15–16.[2]

The Court ordered Plaintiff to serve a copy of the motion for a TRO on Defendant via email by November 25, 2025, and ordered Defendant to respond by December 8, 2025.  Dkt. No. 12 at 2.  Plaintiff emailed Defendant and detailed his attempts at service, as ordered.  Dkt. No. 13 (notice and declaration regarding service).  Defendant did not respond.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin conduct pending a hearing on a preliminary injunction.  *See* Fed. R. Civ. P. 65(b).  The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.

---

[2] In addition to the name, mailing address, email addresses, and telephone number of Defendant, Plaintiff seeks the following: (1) "one year of IP address login history" for Defendant's YouTube channels, Google AdSense ID(s) linked to Defendant's channels; (2) the identities of all other YouTube channels that have been linked to Defendant's AdSense account(s); (3) SubscriberInfo.html files for Defendant's YouTube channels; (4) any Multi-Channel Network information for Defendant's YouTube channels; (5) account transaction details, payment history, and an accounting of Defendant's AdSense accounts associated with his YouTube channels; and (6) "any other account verification payment method information, or tax identification information associated with the accounts identified above."  Dkt. No. 8-13 at 15–16.  To the extent Plaintiff seeks information to help effectuate service, the Complaint already identifies an address and telephone number for Defendant.  Compl. ¶ 7.  And the appropriateness of this extensive third-party discovery is best assessed via the normal discovery process, as opposed to on an application for a TRO.  The Court therefore declines to adopt Plaintiff's order to the extent it seeks to compel this information from Google.

3

2001).  A plaintiff seeking preliminary relief must normally establish: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.  A court must find that "a certain threshold showing" is made on each of the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).  Under the Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious questions going to the merits" and "a balance of hardships that tips sharply towards the [movant], . . . so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

### III.   DISCUSSION

#### A.   Likelihood of Success on the Merits

The Court finds that Plaintiff is likely to succeed on the merits of his claims for providing false CMI and removing CMI.  To state a claim for false CMI, Plaintiff "must plausibly allege that defendant knowingly provided false copyright information and that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018).  To succeed on his claim for removal of CMI, Plaintiff must show "(1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant distributed . . . works [or] copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or . . . having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement." *Mango v. BuzzFeed*, 970 F.3d 167, 171 (2d Cir. 2020) (internal citations and quotations omitted and cleaned up).  The Ninth Circuit has drawn "a reasonable inference" that a defendant removed CMI with the required knowledge where a plaintiff submitted evidence that a defendant reposted a work without the plaintiff's identifying watermark. *APL Microscopic, LLC v. Steenblock*, 2022 WL 4830687 (9th Cir. Oct. 3, 2022).

4

Plaintiff has provided screenshots that plainly show Defendant has reposted Plaintiff's videos after removing Plaintiff's watermark, which constitutes CMI, and has also reposted them, in some instances with false CMI, purporting to own them himself. *See generally* Dkt. No. 8-3. In each instance, it appears plain that the video has been cropped or edited in a way that removes Plaintiff's CMI. The Court finds that this evidence is sufficient to show that Plaintiff is likely to be able to establish that Defendant removed Plaintiff's CMI and distributed manipulated versions of Plaintiff's videos, in some instances with false CMI that held out the videos as Defendant's own creation, and that he did so with the required knowledge and intent. The Court therefore finds that Plaintiff is likely to succeed on the merits of his claims for removal of CMI and providing false CMI under § 1202.

Finally, DMCA § 512(f) imposes liability for misrepresentations that copyrighted material has been removed from a platform by mistake. Under the statute, "any person who knowingly materially misrepresents . . . that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages . . . as a result of the service provider relying upon such misrepresentation . . . in replacing the removed material or ceasing to disable access to it." 17 U.S.C. § 512(f). Thus, to state a claim for a counter-takedown notice, a plaintiff must allege that a defendant (1) knowingly and materially misrepresented that material or activity was removed or disabled by mistake or misidentification, (2) that a service provider relied on such misrepresentation, and (3) that plaintiff was injured as a result. *See Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1147–48 (N.D. Cal. 2011) (analyzing § 512(f) in the context of a counter-takedown notice). Plaintiff has submitted evidence that Defendant misrepresented that the allegedly infringing material was "removed or disabled by mistake or misidentification." He has also submitted evidence that YouTube relied on Defendant's statement by initiating a process to restore access to the removed material if Plaintiff did not show that he had filed a lawsuit, and that he was injured as a result. Accordingly, the Court finds that Plaintiff is likely to succeed on the merits of his claim for DMCA misrepresentation.

### B.    Irreparable Harm

To show the likelihood of irreparable harm, Plaintiff must show that "remedies available at

1  law, such as monetary damages, are inadequate to compensate for the injury." *Herb Reed Enters.,*
2  *LLC v. Fl. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013).  The Court finds that he meets
3  that standard here.  Plaintiff has submitted evidence of Defendant's reproduction, alteration,
4  display and distribution of his videos stripped of his CMI, and he submits that if YouTube restores
5  the altered videos, he will suffer irreparable harm from a loss of "attribution and creative control"
6  that cannot be remedied by money damages.  *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d
7  848, 865–66 (9th Cir. 2017) (no abuse of discretion by district court in a DMCA case "in
8  concluding that the loss of goodwill, negotiating leverage, and non-monetary terms in the Studios'
9  licenses cannot readily be remedied with damages"); *see also Herb Reed Enters., LLC v. Fla.*
10 *Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over
11 business reputation and damage to goodwill could constitute irreparable harm.").

### C. Balance of the Hardships

Because Defendant is engaged in prohibited conduct, Plaintiff asserts that the only hardship Defendant will suffer "is court-ordered compliance with the copyright laws." Dkt. No. 8-1 at 19 (quoting *Adobe Sys., Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996).  By contrast, Plaintiff argues that he will lose: (1) the ability to collect damages, (2) control over his creative works, (3) attribution for his content, and (4) any remedy for Defendant's systematic violations.

As to his first alleged hardship, Plaintiff argues that he will not be able to collect damages from Defendant, who is located in India.  At bottom, Plaintiff seeks to preserve his ability to collect money damages because India has no treaty with the United States to enforce civil judgments.  Plaintiff contends that restraining Defendant's access to AdSense funds is necessary to ensure that Plaintiff can recover damages if he eventually prevails in the lawsuit.  He therefore requests that the Court order what amounts to an asset freeze of Defendant's AdSense funds, which he says Google disburses on a monthly basis. Dkt. No. 8-1 at 16.  Those AdSense funds are only disbursed if the account balance "exceeds the payment threshold and no payment holds exist," and Plaintiff contends that due to Defendant's substantial subscribership, the "account balance is highly likely to exceed the payment threshold." *Id.*  Therefore, Plaintiff argues that

Google is likely to disburse funds to Defendant regularly, allowing Defendant to profit from Plaintiff's works. *Id.* His proposed order would both remove Defendant's access to the funds and impose on Google an affirmative obligation to freeze Defendant's assets.

The Court finds at least two problems with Plaintiff's arguments regarding the collectability of damages. First, Plaintiff has submitted evidence showing that YouTube has already taken down 16 of the 17 videos at issue pending the resolution of this litigation. Defendant therefore does not stand to gain any additional funds from those videos going forward. And as to one video, YouTube "found that the copyrighted work [Plaintiff] identified doesn't seem to appear in [Defendant's] videos," so Plaintiff has not established that he is entitled to damages stemming from Defendant's alleged manipulation of that video. Second, it is not clear to this Court that Plaintiff is even entitled to statutory damages under the DMCA, let alone an asset freeze, in a case concerning unregistered works. It is well established that a plaintiff may bring DMCA claims in a pre-registration posture. *See Global Refining Grp., Inc. v. PMD Analysis Inc.*, 2023 WL 5733968, at *11 (S.D.N.Y. Aug. 15, 2023) (collecting cases). However, it is not clear that plaintiffs can recover statutory damages absent such registration. None of the cases Plaintiff cites suggest that he is entitled to such damages, and the Court has found no controlling authority that he is, either. And an asset freeze is obviously a consequential step at the preliminary relief stage, especially when Defendant has only been emailed Plaintiff's voluminous filing and has not responded. Accordingly, the Court declines to impose an asset freeze based on Plaintiff's hypothetical inability to collect from Defendant if he ultimately succeeds in this case. The Court thus rejects the following of Plaintiff's proposed remedies:

- Preventing Defendant from "Withdrawing, transferring, or dissipating any funds in Defendant's Google AdSense account(s)" associated with Defendant's YouTube channels while this lawsuit is pending, or from "[m]onetizing or causing to be monetized" Plaintiff's videos on YouTube or any other platform;
- Requiring Google to secure Defendant's AdSense account(s) and prevent any withdrawal, transfers or disbursements while this litigation is pending.

Plaintiff also argues that without an injunction, he will lose "any remedy for Defendant's

7

1 systematic violations." But Plaintiff's proposed remedy to address this hardship is also
2 problematic. Plaintiff proposes that the Court enjoin Defendant from: "Directly or indirectly
3 submitting additional DMCA counter-notifications to YouTube or any other service provider"
4 claiming that Defendant's takedown notices are based on "mistake or misidentification," "or
5 taking any other action to cause restoration of videos that have been removed pursuant to"
6 Plaintiff's DMCA takedown notices. In essence, Plaintiff seeks an order from the Court that
7 would bar Defendant's speech in the DMCA counter-notification process. Broad orders
8 prohibiting future speech are "classic examples of prior restraints" and are routinely struck down.
9 *See Alexander v. United States*, 509 U.S. 544, 550 (1993). Given the "heavy presumption" against
10 the constitutional validity of such prior restraints, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539,
11 558 (1976), the Court declines to adopt Plaintiff's proposed remedy to foreclose Defendant's
12 future use of the DMCA notification process.

      The Court finds, however, that Plaintiff's remaining hardships—a loss of control over his creative works and attribution for his content—outweigh Defendant's. The Court therefore finds that the balance of the hardships tips in Plaintiff's favor. And the Court finds that preliminarily precluding Defendant from (1) "[r]emoving, altering, or falsifying" CMI from any of Plaintiff's videos; (2) "[p]roviding or distributing false" CMI "or any other false attribution" to any of Plaintiff's videos; and (3) "[u]ploading, copying, displaying, distributing, or creating derivative works" of Plaintiff's videos on any platform" will adequately address these harms.

### D. Public Interest

Next, Plaintiff has demonstrated that the enforcement of copyright laws and deterring violations of the DMCA's copyright management information provisions is in the public interest. As the Ninth Circuit has recognized, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" content. *VidAngel, Inc.*, 869 F.3d at 867.

## IV. BOND

Plaintiff proposes a bond of $500.00. Dkt. No. 8-1 at 26. The Court agrees this is a reasonable amount given Plaintiff's pro se status. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and

Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Five Hundred Dollars and Zero Cents ($500.00), as payment of damages to which defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court, and in the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

## V. ALTERNATIVE SERVICE

In connection with his application for a TRO, Plaintiff also requests that the Court permit him to serve Defendants through alternative means, specifically service by email. *See* Dkt. No. 8-1. Plaintiff has identified six different email addresses Defendant has used to contact him, and he has also identified an address in India where he believes Defendant resides. Compl. ¶¶ 7, 9. Plaintiff notes that the Hague Convention on the Service does not prohibit service by email. Plaintiff therefore argues that the Court may order service by email under Federal Rule of Civil Procedure 4(f)(3), which permits courts to order service "by other means not prohibited by international agreement." Dkt. No. 8-1 at 26–28. And he urges that email service is appropriate because he "faces significant delays" if service under the Hague Convention is required. *Id.*

"District courts in the Ninth Circuit are split on the issue of whether defendants may be served outside the United States via email, when the foreign country where service will occur is a signatory to the Hague Service Convention and has not affirmatively agreed to allow email service under that Convention." *Cadence Design Sys., Inc. v. Fenda USA Inc.*, 734 F. Supp. 3d 960, 963 (N.D. Cal. 2024) (citing *Facebook, Inc. v. 9 Xiu Network (Shenzen) Tech. Co.*, 480 F. Supp. 3d 977, 984 & n.5 (N.D. Cal. 2020)). Although the process to serve Defendant under the Convention may be time-intensive, the Court does not find this to be a sufficient reason to sidestep the Convention and permit alternative service under the circumstances. *See* Fed. R. Civ. P. 4(f)(1) (providing for service of an individual in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents"). The Court therefore **DENIES** the motion for alternative service in its discretion. Dkt. No. 13. The Court further **DIRECTS** Plaintiff to file a status report of no more than five pages by January 30, 2026,

detailing the status of his efforts to serve Defendant under the Hague Convention.

## VI. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's TRO application, Dkt. No. 8. Defendant is **ORDERED** to immediately cease and refrain from:

- Removing, altering, or falsifying copyright management information, including Plaintiff's watermarks (which appear as either "© Women.MidwestWrestle.com" or "© MidwestWrestle.com," depending on the video), from any of Plaintiff's copyrighted works,
- Providing or distributing false copyright management information, including adding the "Rocky!" logo associated with Defendant's account, or any other false attribution to any videos containing Plaintiff's copyrighted works; and
- Uploading, copying, displaying, distributing, or creating derivative works of Plaintiff's copyrighted works on any platform.

The Court denies the other relief Plaintiff seeks for the reasons explained in this Order. This TRO shall take effect immediately. Absent any further order from the Court, the TRO will be converted to a preliminary injunction within fourteen days of this Order. The Court **DIRECTS** Plaintiff to serve Defendant in accordance with the Hague Convention and file a status report of no more than five pages by January 30, 2026 detailing his efforts to do so. The Court also **DIRECTS** Plaintiff to send to Defendant by December 15, 2025 a copy of this Order at the email addresses identified in Paragraph 9 of the Complaint. Finally, the Court **DIRECTS** Plaintiff to post bond in the amount of $500.00 as payment of damages to which defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action.

**IT IS SO ORDERED.**

Dated: 12/12/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge